UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARR CLIFTON,<br><br>       Plaintiff,<br><br>   v.<br><br>PEARSON EDUCATION, INC., and JOHN DOE PRINTERS 1-10,<br><br>       Defendants. | Case No.: CV 11-03640-EJD (PSG)<br><br>**ORDER GRANTING-IN-PART DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR A PROTECTIVE ORDER**<br><br>**(Re: Docket No. 40)** |

On May 1, 2012, the court heard oral argument regarding Defendant Pearson Education, Inc.'s ("Pearson") Motion for a Protective Order. Having reviewed the briefs and considered the arguments and evidence presented, the court hereby GRANTS-IN-PART Pearson's motion for a protective order.

**I.     INTRODUCTION**

Pearson's business includes, among other things, publishing educational textbooks.[1] Pearson entered into licensing agreements with Plaintiff Carr Clifton ("Clifton") to feature his

---
[1] *See* Docket No. 1 (Compl.) ¶ 3.

1
Case No.: CV 11-03640-EJD (PSG)
**ORDER GRANTING-IN-PART DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR A PROTECTIVE ORDER**

photographs in Pearson textbooks.[2] On July 25, 2011, Clifton filed a Complaint against Pearson. In it, Clifton alleges that Pearson violated his copyrights when Pearson's actual print quantities exceeded the number allowable under the licensing agreements between Pearson and Clifton.[3] Pearson moved for a protective order on March 2, 2012, and requests protection for the following categories of information: (1) print quantities and dates of Pearson's publications; (2) Pearson's non-public financial, sales, and distribution data concerning its publications; and (3) Pearson's sales and marketing projections and forecasts.[4]

## II. LEGAL STANDARDS

"The court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[5] Generally, the party seeking a protective order must demonstrate that "good cause" exists by specifically demonstrating that disclosure will cause a "specific prejudice or harm."[6] Rule 26's "good cause" requirement is a heavy burden.[7] "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[8] "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary."[9]

---

[2] *See id.* ¶ 8.

[3] *See id.* ¶ 10.

[4] *See* Docket No. 40 (Mot. for Protective Order) at 2.

[5] Fed. R. Civ. P. 26(c)(1).

[6] *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002).

[7] *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

[8] *Phillips*, 307 F.3d at 1211-12.

[9] *Id.* at 1211.

2
Case No.: CV 11-03640-EJD (PSG)
**ORDER GRANTING-IN-PART DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR A PROTECTIVE ORDER**

### III.   BACKGROUND

Pearson contends that all three categories of documents qualify for protection. As to the first category of documents, print quantities and dates, Pearson argues that disclosure of this information would reveal Pearson's sales strategies, and provide its competitors with insight into the methods and processes by which Pearson conducts its business.[10] Pearson also contends that it has taken steps to keep this information confidential. For example, Pearson claims that it required recipients of this information to sign non-disclosure agreements.[11] In response, Clifton argues that the information is of little or no value to Pearson's competitors, and the alleged harm Pearson claims it would suffer if the information were revealed is vague and conclusory.[12] Clifton also alleges, and musters numerous examples in support, that Pearson routinely failed to guard this category of information in the normal course of business.[13]

The second and third categories of documents are Pearson's non-public financial information, and its marketing projections. As to Pearson's non-public financial information, Pearson argues that its competitors could use this information to more effectively target Pearson's customers and markets.[14] For example, Pearson argues that its competitors could undercut Pearson by offering Pearson's authors more generous royalty rates.[15] As to Pearson's marketing information, Pearson argues that this information would benefit its competitors because it would reveal how many copies of a particular textbook Pearson hoped to sell, as well as reveal Pearson's interest in growing a particular market.[16] In response, Clifton labels Pearson's reasoning as

---

[10] *See* Docket No. 40 (Mot. for Protective Order) at 7.

[11] *See id.* at 7-9.

[12] *See* Docket No. 41 (Opp. to Mot. for Protective Order) at 4-6.

[13] *See id.* at 6-11.

[14] *See* Docket No. 40 (Mot. for Protective Order) at 9-10.

[15] *See id.* at 9-10.

[16] *See id.* at 11-12.

3
Case No.: CV 11-03640-EJD (PSG)
**ORDER GRANTING-IN-PART DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR A PROTECTIVE ORDER**

conclusory, and also points out that the financial and marketing information at issue is stale and therefore of little use to Pearson's competitors.[17]

### IV.   DISCUSSION

The court turns first to the threshold inquiry of whether the categories of information Pearson claims require protection are in fact eligible for protection under Fed. R. Civ. P. 26(c)(1). Because the three categories Pearson seeks to protect—print run, financial, and marketing data—falls squarely under the umbrella of "trade secret" or "commercial information," the court finds that these three categories are at least nominally eligible for protection.[18]

The court next turns to whether Pearson has met its burden of showing a specific harm if the information is not protected, and whether Pearson in fact treated the information as confidential in the ordinary course of business. As to the first category of information, print run data, the court finds that Pearson has failed to meet its burden on both counts. First, Pearson failed to meet its burden of showing a particularized harm. Pearson offers only the conclusory statement that Pearson's competitors would learn Pearson's "sales strategies" from the print run information.[19] But Pearson makes the logical leap from "print run information" to "sales strategies" without adequately explaining how the two are related. In short, the court doubts Pearson's competitors, armed with print run information that is in many cases years old, can use this information to divine Pearson's current sales strategies.

However, even assuming this information would give Pearson's competitors a leg up, and the court doubts very much that it would, Pearson failed to keep this information confidential in the ordinary course of business. Clifton cites numerous examples, including Clifton's own dealings with Pearson, in which Pearson revealed print run information to actual or potential licensees without requiring confidentiality agreements or otherwise indicating that the information was

---

[17] *See* Docket No. 41 (Opp. to Mot. for Protective Order) at 16-17.

[18] *See* Fed. R. Civ. P. 26(c)(1).

[19] *See* Docket No. 40 (Mot. for Protective Order) at 7.

4
Case No.: CV 11-03640-EJD (PSG)
**ORDER GRANTING-IN-PART DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR A PROTECTIVE ORDER**

sensitive.[20] Moreover, assuming Pearson adequately demonstrated both a particularized harm, and that it kept the information confidential, the public's interest in openness outweighs Pearson's interest in keeping this information private, especially if that information would reveal wrongdoing. Clifton alleges that Pearson's motivation for wanting the print run information protected is that Pearson fears the information will lead to more litigation like this one.[21] If one assumes this is true, Pearson's fear is indeed understandable. But fear of potential litigation does not meet the standard set forth in Fed. R. Civ. P. 26(c)(1).[22]

As to the second and third categories of information, financial and marketing information, the court finds that Pearson has met its burden. Pearson's argument that its competitors could utilize Pearson's non-public financial information to undercut Pearson by offering its authors better royalty rates is sufficiently particular and establishes a specific concrete harm.[23] As to Pearson's marketing information, Pearson argues that this information would benefit its competitors because it would reveal Pearson's interest in growing particular markets.[24] The court finds that this reasoning, too, is sufficiently particular. In addition, Pearson took steps to keep both of these categories of information confidential in the normal course of business—a fact Clifton does not dispute.[25]

---

[20] *See* Docket No. 41 (Opp. to Mot. for Protective Order) at 6-11.

[21] *See id.* at 11-15.

[22] *See, e.g.*, *Nestle Foods Corp. v. Aetna Casualty & Surety, Co.*, 129 F.R.D. 483, 486 (D.N.J. 1990) ("Moreover, if the basis for defendants' motion is to prevent information from being disseminated to other potential litigants, then defendants' application must fail. . . . The courts have emphatically held that a protective order cannot be issued simply because it may be detrimental to the movant in other lawsuits."); *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure.").

[23] *See* Docket No. 40 (Mot. for Protective Order) at 9-10.

[24] *See id.* at 11-12.

[25] *See id.* at 9-12.

### V.   CONCLUSION

The court GRANTS-IN-PART Defendant's motion for a protective order. The protective order shall protect Pearson's non-public financial and marketing information, but shall not protect Pearson's print run information.[26] Pearson shall produce all responsive print run information no later than May 18, 2012.

**IT IS SO ORDERED.**

Dated:  5/11/2012

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
PAUL S. GREWAL
United States Magistrate Judge

---

[26] *Cf. Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, --- F.R.D. ----, 2012 WL 957534, at *2 (E.D. Pa. 2012) (denying request for protective order regarding print run quantities and dates because the information was not kept confidential pre-litigation and because the public interest favors disclosure); *DRK Photo v. John Wiley & Sons, Inc.*, Case No. CV 11-8133-PCT-FJM, at Docket No. 17 (Order) (D. Ariz. Oct. 18, 2011) (denying request for protective order regarding print run quantities and dates because requestor failed to show good case for shielding the information from the public).